#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TIME WARNER CABLE INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 10-2453-KHV-JPO |
| | ) |
| **THEORYSHARE LLC, NICHOLAS AARON DAVID and JOHN DOES 1-10,** | ) ) ) |
| | ) |
| **Defendants.** | ) |

### COMPLAINT

Plaintiff Time Warner Cable Inc. ("TWC"), by its attorney, as and for its Complaint herein against the defendants, alleges the following:

### NATURE OF THE ACTION

1. The defendants in this action are involved in a criminal enterprise, the sole purpose of which is the sale of "hacked modems," which enable theft of high-speed data ("HSD") services. This is an action for the direct and indirect circumvention of a system controlling access to copyrighted works in violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201(a)(1), trafficking in technology designed to circumvent a system controlling access to copyrighted works in violation of the DMCA, 17 U.S.C. § 1201(a)(2), and trafficking in technology designed to circumvent the protection of one or more rights of a copyright owner in a copyrighted work in violation of the DMCA, 17 U.S.C. § 1201(b); intentional accessing of a computer used for interstate commerce or communication, without authorization or by exceeding authorized access to such a computer, and by obtaining information from such a protected computer in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*; and misappropriation of proprietary and confidential

CC 2290624v1

information associated with TWC's high-speed data ("HSD") services, which information constitutes a "trade secret," in violation of K.S.A. 60-3320 *et seq*. This complaint also alleges supplemental law claims based upon unjust enrichment, conversion, trespass and tortious interference with a contract. In this action, TWC seeks declaratory and injunctive relief and monetary damages, and requests the imposition of a constructive trust.

## JURISDICTION AND VENUE

2. This action arises under 18 U.S.C. §1030, 17 U.S.C. §§1201 and 1203(a), and supplemental law claims. This action also arises under 28 U.S.C. 1332, as the matter in controversy exceeds $75,000.00 and is between citizens of different states.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and supplemental jurisdiction over the state law claims. Venue is properly established in the District of Kansas pursuant to 28 U.S.C. §§1391(b) and 1400(a), as the defendants reside in the District, and a substantial part of the events giving rise to the claim occurred in the District.

## PARTIES

4. TWC is a Delaware corporation, with its principal place of business at 60 Columbus Circle, New York, N.Y.

5. At all times hereinafter mentioned Theoryshare LLC is a domestic limited liability company registered in the State of Kansas with its principal place of business and registered office at 104 South 4th Street, Suite 6, Manhattan, Kansas. The resident agent of Theoryshare LLC is Nicholas Aaron David.

6. At all times hereinafter mentioned, defendant Nicholas Aaron David is a resident of the State of Kansas, with a residential address at 410 Fremont Street, Manhattan, Kansas.

7.      John Does 1-10, are the fictitious names of yet unidentified persons who have assisted and conspired with defendants Theoryshare LLC and Nicholas Aaron David.

## FACTUAL BACKGROUND
### TWC's HSD Service

8.      In addition to cable television and telephone service, TWC offers an HSD service, known as Road Runner, to its customers in Kansas and throughout the United States.  Among other things, Road Runner enables a customer to access the Internet at high speed.  The HSD service operates by subscription and is intended only for paying TWC customers.  The HSD service offered by TWC is an interstate radio frequency service transmitted over wire.

9.      In order to provide HSD service to its customers, TWC uses proprietary hardware and software which are protected from infringement by patents and copyright.  The HSD service is comprised of integrated software and hardware, such as servers, switches, routers, and modems that enable connectivity to the Internet.  As such, the TWC HSD system is a computer system.  A DOCSIS (Data Over Cable Service Interface Specification) compliant modem is necessary to access the HSD service over an existing cable television system and is connected to a subscriber's home computer or gateway via a USB cable and/or an Ethernet cable.  The modem links the TWC customer's computer to the fiber-optic/coaxial cable network and to TWC regional data centers.

10.     Customers pay TWC based upon which tier of Road Runner service they wish to receive.  The higher priced levels enable the ability to transfer more data in the same amount of time.  Because more data transfers in a fixed period of time, the customer's on-line experience is faster.

11.     Modems are provided to TWC customers as part of their subscription to the Road Runner service.  Customers also have the option to purchase modems from legitimate retail

3

stores.  Because TWC modems work well, are serviced and maintained by TWC and do not require an upfront investment, approximately 97.77% of Road Runner customers use a modem provided by TWC.

12.     In order to gain access to HSD service and to prevent unauthorized access, each modem is embedded with a digital certificate by the modem manufacturer, which includes a MAC (Media Access Control) address.  A MAC address uniquely identifies every device and component that shares communications lines or wireless links on a networked system.  Because a MAC address is a unique identifier, TWC uses the MAC address to identify paying customers and to prevent unauthorized access.

13.     To properly authenticate a TWC HSD customer, TWC's system checks the MAC address for each modem seeking to connect with the HSD service.  This check allows TWC to determine if the modem's user is a TWC customer authorized to receive HSD service and, if so, his or her paid-for level of service.  As part of the modem registration and authentication process, TWC servers provision the modem to receive the service package that the customer has ordered.  Only modems which present the MAC address of an authorized and paying TWC customer obtain service.  TWC servers disable the modem if the MAC address is determined not to be authentic by issuing a "disable.bin" file which serves to deny access to the HSD service

14.     "Cable modem hacking" requires obtaining a modem, modifying the modem's software, and adding additional software to enable the modem to improperly access a protected HSD network, thereby obtaining HSD service without paying for it.  To obtain HSD service, the "hacked" modem commits a form of identity theft by enabling the use of a MAC address of a legitimate modem associated with an unsuspecting, authorized HSD subscriber.  TWC's system views the hacked modem as "authorized" because such system identifies and recognizes the

MAC address that the hacked modem is impersonating. Such impersonation is commonly referred to as "MAC cloning" or "MAC spoofing".

15. When the "cloned" MAC address is recognized by TWC, its servers issue an Internet Protocol (IP) address to the computer or gateway of the hacked modem user. IP addresses are leased by TWC for an annual fee, and therefore TWC has a fixed number of available IP addresses intended for authorized customers. When the hacked modem user's gateway or computer is issued an IP address, it reduces the number of available IP addresses intended for the operation of TWC's HSD system.

16. When a hacked modem presents itself for access to TWC's HSD system, it shows fraudulent identifiers which communicate with TWC's proprietary authentication software. By circumventing TWC's system security functions, and by fraudulently presenting an authorized customer's MAC address, the hacked modem is able to trick TWC's servers into issuing a proprietary DOCSIS configuration file. This configuration file incorporates copyrighted instructions created by TWC employees and owned by TWC; such instructions, along with accompanying proprietary data, are intended to provision a modem for, among other things, the level of service it is authorized to receive. When it receives a configuration file, the hacked modem stores it, executes the instructions and data contained in the file and communicates back to TWC's server a confirmation that the IP address and the configuration file has been received, and that it is on-line and ready for use. In this way, the TWC authentication process is deceived into allowing the hacked modem user access to the configuration file, the HSD service and content made available via the HSD service.

17. TWC's HSD service operates on an integrated and protected computer system. The HSD service is intended for use only by those who are customers and pay a subscription fee.

5

TWC's security system (of which, MAC address authentication is a part) is maintained to restrict access only to paying customers. The security system consists, in part, of patented servers and copyright-protected software. The HSD system interacts between customer premise computer equipment and servers around the world (the Internet), and the path back from servers to customer computers.

## DEFENDANTS' MISCONDUCT

18. The defendant Nicholas Aaron David (David) has been engaged in a scheme to illegally manufacture or assemble, sell and/or otherwise distribute hacked modems for profit under the business name Theoryshare LLC from a principal business location in Manhattan, Kansas. David and his unidentified confederates market and sell hacked modems and support the use of such devices by use of its website "Theoryshare.com." This illicit business is national in its scope.

19. David's corporate "front" Theoryshare LLC, maintain a website (theoryshare.com) in which he describes his operation as "Theoryshare The Broadband Experts." On the website, an end user can purchase a broadband modem with features including "MAC Clone," "Serial Clone" and other features specifically enabling a user to steal HSD services. The website offers forums for hackers, downloads which enable a user of a hacked modem to observe the assignment of IP addresses when authorized modems boot up, and provides answers to FAQs (Frequently Asked Questions) for persons interested in defendants' illegal equipment. The devices and many of the web site features are specifically intended to circumvent the HSD security of TWC and its billing systems and enable an end user to obtain HSD service, and access copyrighted works and other materials through the HSD service, without payment.

20.     Each hacked modem functions through the use of "Haxorware" or "Blackcat" software. Haxorware and Blackcat are firmware modified with the express purpose of facilitating the theft of HSD service by enabling manual changes to the security functions of the modem. Among other things, Haxorware and Blackcat enable a modem to accept the MAC address of a legitimate TWC customer and access the HSD network by impersonating that authorized device and the customer who uses it. Another feature of Haxorware is to enable a hacked modem to circumvent security functions such as BPI (Baseline Privacy Interface), which is a sophisticated form of encrypted security used by TWC. Haxorware enables a user to bypass BPI for the express purpose of stealing HSD service.

21.     Defendants maintain various "downloads" on the Theoryshare.com website which are specifically intended to eavesdrop on and record the "log on" transactions between TWC's customers and TWC's servers. For example, "DHCP Sniffer" enables a hacker to observe and record legitimate modem MAC addresses. The hacker then has a series of authorized MAC addresses to "clone" for use in defendants' hacked modems and enable the access to HSD service. A hacked modem must use a MAC address outside the hacker's CMTS (Cable Modem Termination System), which services several thousand modems within TWC's much larger systems, or a conflict resulting in outages may occur.

22.     Defendants' maintain various hacking "tutorials" on their website. For example, (i) "Quick and Dirty BPI Tutorial" instructs a hacker on how to use Haxorware to disable BPI in order to boot up a hacked modem; (ii) "Disabling BPI+ Via GUI" instructs a hacker to avoid BPI by using a "graphical user interface" (GUI); and (iii) "Haxorware User Manual," which instructs a user to operate the hacking software contained in many of defendants' illegal products.

23. The use of hacked modems causes direct and irreparable harm to TWC. Each hacked modem remains on TWC's system anonymously and without detection impersonating an authorized customer's account until a painstaking diagnostic search is run to determine duplicate MAC addresses and shut them down. Moreover, the use of a hacked modem can cause "outages" in service to the customer whose account is cloned. The dishonest end user of defendant's devices need only obtain another MAC address to reinstate illegal use if the MAC address that was "cloned" is discovered. The use of a hacked modem is difficult to identify and difficult to distinguish from the legitimate address it clones, creating expense and burden to the HSD system, causing outages, and other engineering problems.

24. The use of hacked modems presents a significant concern to law enforcement and to the legitimate customer that has suffered the identity theft of his or her MAC address. Some people use hacked modems to commit and plan criminal activity, which can include serious issues such as terrorism and child endangerment. Because a hacked modem impersonates an authorized customer's use of TWC's system, TWC cannot locate the true criminal in response to appropriate subpoenas by law enforcement and there is an enhanced risk that TWC will identify the identity theft victim.

25. Nicholas Aaron David and John Does 1-10 have structured Theoryshare LLC not only as a trade name but also as an "alter-ego" designed to shield them from individual liability. The acts of David and John Does 1-10 are illegal in nature and therefore cannot be shielded from liability by Theoryshare LLC.

## TWC'S INVESTIGATION OF DEFENDANTS

26. On January 29, 2010, a TWC investigator ordered two hacked modems through theoryshare.com for use in a TWC HSD service area in New York. On February 1, 2010 a

confirmation of the purchase was sent by monkeywrencher@theoryshare.com. On February 5, 2010 an email was sent from site@theoryshare.com stating that said order was shipped. On February 12, 2010 a package was delivered by UPS containing two hacked modem devices, having been shipped from "Nick D," (758) 539-8755, Theoryshare LLC 104 4th Street, Manhattan Kansas 66502. On March 9, 2010 at 2:00 p.m., the hacked modems were tested and one device operated to accept a MAC address different from the one assigned by the manufacturer, and was capable of bypassing TWC's MAC address authentication system and logging on to TWC's HSD system.

    27. On April 26, 2010, a TWC investigator contacted Theoryshare by telephone to determine availability of five (5) SB5101 hacked modems. A response from a male identifying himself as "Nick" stated that he had several hundred SB5101 modems in stock. On April 26, 2010 at 5 p.m. ET an order was placed on theoryshare.com for five (5) SB5101 devices. The order was confirmed at 5:26 p.m. ET by email from monkeywrencher@theoryshare.com. On May 4, 2010 a package was delivered from "Shipping Dept" (785) 539-8755 Theoryshare, LLC, 104 S 4th Street, Manhattan, Kansas, containing five (5) SB5101 hacked modems. On May 17, 2010, five hacked modems were tested and four of them were determined to accept an unauthorized MAC address and were capable of bypassing TWC's MAC address authentication system thereby logging on to TWC's HSD system.

    28. On June 10, 2010 a TWC engineer and a TWC investigator reviewed the portion of the theoryshare.com website that is identified as "downloads." Said persons clicked "Cable Modem Modification Files and Downloads" and downloaded a program called "DHCP Sniffer." Dynamic Host Configuration Protocol (DHCP) is a process by which an available Internet

CC 2290624v1

Protocol (IP) address is assigned by an HSD provider to an authorized modem which allows that modem to "boot up" and access the HSD service.

29. The TWC engineer and investigator were able to ascertain that "DHCP Sniffer" is a program that serves one function: to eavesdrop on traffic transmitted on the TWC HSD facility and record transactions between customers and TWC's servers. Specifically, the DHCP Sniffer program enables a user to observe and record the assignment of available IP addresses to the specific MAC addresses of TWC customers when those paying customers logged on to the HSD system. The DHCP Sniffer program keeps a record of those authorized IP and MAC addresses for the user. The program identified approximately 30 MAC addresses in 30 minutes of use. Using "DHCP Sniffer," an unauthorized user of a hacked modem can find and identify authorized MAC addresses to clone or to swap with hackers outside the CMTS on which the DHCP Sniffer was used.

30. On August 3, 2010 a TWC investigator placed an order for two SB5101 hacked modem devices. On the same day the order was confirmed by Theoryshare via email. The devices were received and August 9, 2010 and tested on August 10, 2010 and it was determined that the hacked modems were able to accept an unauthorized MAC address and bypass TWC's MAC address authentication system thereby logging on to TWC's HSD system.

## COUNT I
## Violations of the Digital Millennium Copyright Act, 17 U.S.C. §1201

31. Plaintiff repeats and realleges each allegation in paragraphs 1 through 30 as if each is alleged in full herein.

32. Plaintiff employs a sophisticated computer network designed to provide each paying customer with independent, private and billable high-speed access to the Internet. Cable

10

modems are used by paying customers to gain access to TWC's HSD service and, through such service, to copyrighted materials, both of TWC and of third parties.

33. The hacked modems sold by defendants have the ability to, and do, circumvent TWC's security system and gain unauthorized access to TWC's HSD service, including copyrighted materials made available through such service. A hacked modem presents fraudulent identifiers to TWC's authentication technology, which, as a result, issues, among other things, an IP address and copies of configuration files in response. The copied configuration files contain original works of authorship, created by TWC, incorporating instructions that are stored by the hacked modem and used to access TWC's HSD system. In part, the instructions contained in configuration files enable TWC to provision a modem to receive the level of service that its user is authorized to receive. Once a hacked modem has circumvented TWC's authentication technology and has obtained unauthorized access to TWC's HSD service, the hacker is able to access and use copyright-protected works on the Internet. By cloning a MAC address, the hacked modems impair, deactivate, avoid, remove, or bypass TWC's security and billing system, enabling a hacked modem user to obtain HSD service without authorization and without payment.

34. By creating, marketing and selling hacked modems, and by instructing customers on the use of such devices, defendants have directly and indirectly circumvented a technological measure that effectively controls access to copyright-protected works owned by TWC and by third parties; and has offered to the public, provided, or otherwise trafficked in technology, products, devices and/or components that are primarily intended for the purpose of circumventing such technological measure and to circumvent the protection of one or more rights of TWC and other copyright owners in their copyrighted works.

35. Defendants' hacked modems are primarily designed or produced for the purpose of circumventing, and have only limited or no commercially significant purpose or use other than to circumvent, TWC's security system for its HSD service, which system effectively controls access to copyright-protected works of TWC and third parties that are transmitted over the HSD service to TWC's paying customers.

36. Defendants have marketed their hacked modems with the intent and knowledge that such modems would be used to circumvent plaintiff's system for protecting access to plaintiffs' HSD service (including access to plaintiffs' copyrighted configuration files) and to copyrighted works on the Internet, permitting such copyrighted works to be transmitted to modem users via the HSD service, despite such users' failure to pay for such service.

37. Defendants' conduct constitutes trafficking in a device which is primarily designed or produced for the purpose of circumventing, and which has only limited or no commercially significant purpose or use other than to circumvent, TWC's security system for its HSD service, a technological measure that effectively protects one or more rights of copyright owners.

38. TWC is a person injured within the meaning of 17 U.S.C. §1203(a) by defendants' violations of 17 U.S.C. §§1201(a)(1) and (2); and 1201(b).

39. Plaintiff has no adequate remedy at law to redress such violations.

## COUNT II
## Violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030

40. Plaintiff repeats and realleges each allegation in paragraphs 1 through 39 as if each is alleged in full herein.

41. The defendants have been engaged and continue to be engaged in the manufacture assembly, sale and/or distribution of hacked modems, knowing and intending that such devices

be used to access TWC's HSD service, a protected computer system.  The defendants traffic in hacked modems which are designed to access TWC's HSD system by defeating authentication commands and security systems which protect TWC's HSD product.  The defendants conspire with and assist their customers in the procurement of HSD service, which is something of value, in violation of the Computer Fraud and Abuse Act (CFAA).

42. The defendants' manufacture, assembly, sale and distribution of hacked cable modem devices and other hacking products enable hackers to access the plaintiff's HSD system and obtain HSD service without the required payment or authorization.  Among other techniques, the defendants' products enable users to disguise their cable modem by "cloning," the unique identifiers, including the MAC addresses, of the modem of a legitimate TWC subscriber.  MAC address cloning enables an unauthorized user to electronically "break and enter" onto TWC's HSD system and obtain proprietary files and IP addresses, which would otherwise be available only to authorized customers.  The person whose MAC address is cloned is tied, unknowingly, to the activities of the unauthorized user.  The unauthorized user obtains HSD access and remains undetected on the system while bypassing TWC's billing system.

43. Defendants' conduct requires the plaintiff to monitor its internet system in order to maintain proper signal strength for all geographic areas within its system ("nodes").  This requires engineering time to be diverted to security and requires research engineers' time to create remediation programs to stop MAC address cloning.  TWC's technicians are diverted from other projects in order to restore security to the MAC authentication process and to remove those modems that have had their MAC addresses cloned.

44. The authorization of a cloned MAC address also results in configuration files and IP addresses to be issued to the hacked modem which would otherwise be available to authorized

customers. The process by which a hacked modem breaks into TWC's HSD system impairs the integrity of data, programs, and the system, enabling unauthorized use, outages, depletion of files and impersonation of authorized users. The violations of the defendants have caused damage to TWC's system.

45. The defendant's products have enabled their users to obtain HSD service without payment. These products enable hackers to use, without authorization, IP addresses and configuration files that the plaintiff would otherwise only provide to a legitimate subscriber paying for HSD access. The user of a hacked modem receives HSD service or premium HSD service without authorization and without payment thereby reducing the plaintiff's sales of HSD service, causing a loss in the form of revenue. Use of a hacked modem can cause "outages" of service to authorized customers whose MAC addresses have been cloned. Additionally, the cost of responding to defendants' violations and conducting an assessment of damage by virtue of defendants' hacking, as well as the cost of restoring TWC's HSD system to its condition prior to defendants' conduct, has caused a loss exceeding $5,000.00.

46. Defendants conspire with each of their customers by their sales of hacked modems and by providing ongoing assistance in using those devices on their website. Defendants' website contains downloadable programs, forums, tutorials, offers answers to FAQs, and provides information about installing and using Theoryshare's illicit cable modem hacking products and bypassing proprietary security software.

47. The defendants' violations have injured and will continue to injure plaintiff's ability to maximize its revenue by depriving it the benefit of subscribers to its data service and by injuring its goodwill and reputation. As a further result of such conduct, defendants have gained and will continue to gain unjust enrichment.

48. Upon information and belief, the defendants will continue to violate 18 U.S.C. §1030. Such violations have caused and will continue to cause plaintiff irreparable harm.

## COUNT III
## Kansas Uniform Trade Secrets Act

49. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 48 inclusive as if each are fully alleged herein.

50. Plaintiff's HSD system is operated through the use of software and hardware which are unique and proprietary to TWC. The security aspects of TWC's proprietary software constitutes a trade secret as defined by K.S.A. 60-3320, and contain access information, quantity of available IP addresses, binary files which troubleshoot and reset modems from a data center, service level authority and specific passwords. Such data is transmitted over the HSD confidentially.

51. Defendants' sale of hacked modems and maintenance of programs, tutorials and FAQs enable and assist persons to access TWC's HSD services without authority and without payment. Defendants willfully misappropriate and render assistance to persons who act to misappropriate the security software of TWC for the express purpose of stealing HSD service. Defendants, through the sale of hacked modems, intend to assist in the breach of confidential transmission of data which is necessary for the operation of TWC's HSD service.

52. The misappropriation of TWC's trade secrets violates the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320 et. Seq., and causes irreparable harm to TWC for which TWC has no adequate remedy at law.

## COUNT IV
## Supplemental Claim for Unjust Enrichment

53. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 52 inclusive as if each are fully alleged herein.

15

54. The hacked modems manufactured, assembled, marketed and/or sold by defendants allow the purchasers to receive plaintiff's HSD service without payment to plaintiff.

55. Defendants' sale and distribution of cloned modems for use on TWC's HSD service diverts to the benefit of the defendants those revenues and profits which would otherwise accrue to plaintiff from its provision of HSD service to its subscribers.

56. The defendants are unjustly enriched by the diversion of revenues and profits to them. This unjust enrichment is enjoyed at the expense of and to the detriment of the plaintiff.

57. As such, all profits and revenues obtained by the defendants as a result of the operation of Theoryshare and the sale and distribution of hacked modems and related equipment should be deemed held by the defendant in a constructive trust for plaintiff and title should be transferred by Order of the Court to plaintiff.

## COUNT V
### Supplemental Claim for Conversion

58. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 57 inclusive as if each are fully alleged herein.

59. Defendants have intentionally exerted dominion and control over TWC's HSD service, Internet Protocol Addresses, and configuration files which interfered with TWC's exclusive right to control such product. As such, defendants have diverted profits and revenues which would otherwise be due and owing to plaintiff.

60. The amount of diverted profits and revenues by the defendant properly belongs to plaintiff and were converted by defendant to the exclusion of plaintiff's rights. Said profits should be held in constructive trust for plaintiff.

## COUNT VI
### Trespass onto Plaintiff's Computer

61. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 60 inclusive as if each are fully alleged herein.

62. TWC's HSD service is a computer system comprised of integrated hardware and software and protected by a multi-level security system.

63. Defendants have conspired to, and intended to use TWC's HSD system without authority and with the intention of withdrawing and removing computer data and with the intent to alter and damage the proper functioning of the system.

64. Defendants products are intended to access TWC's computers, systems, networks, and software without authorization and without payment, causing damages to the HSD system. TWC is damaged as a result of defendants' conduct.

## COUNT VII
### Tortious Interference With a Contract

65. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 64 inclusive as if each are fully alleged herein.

66. Defendants know or should know that TWC has an economic relationship with each of its customers which contains the probability of future benefit to TWC. Defendants know or should know that TWC has a subscriber agreement with its customers.

67. Section 3(c) of TWC's standard subscriber agreement reads as follows:

> **3. Your Right to Use our Services and Property is Limited**
>
> (c) If you knowingly access Services that you have not paid for, or damage or alter our Equipment (or use third party equipment) in order to obtain services that you have not paid for, you will have breached this Agreement and possibly subjected yourself to statutory damages, fines or imprisonment.

17

68. Many of TWC's customers purchase cable television service and/or telephone service. As a result of such purchases TWC provides access to its fiber and coaxial cable system to the home of that customer. Before a hacked modem can be used to steal HSD service, access to TWC's fiber and coaxial cable system is required.

69. When defendants sell a hacked modem to customers that receive cable television or telephone services from TWC for use on TWC's system, it is intentionally and tortiously interfering with the contract between TWC and its customers. Such tortious interference with its contracts causes irreparable harm and monetary damage.

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1) Declare that the defendants' unauthorized manufacture, assembly, marketing and sale of hacked modems were intended to break into TWC's secure and protected HSD system to obtain HSD service without authorization, and thereby violated 17 U.S.C. § 1201, 18 U.S.C. §1030, and K.S.A. 60-3320 et. seq. and that such violations were committed intentionally and for the purposes of commercial advantage and private financial and commercial gain;

(2) In accordance with 17 U.S.C. §1203(b)(1), 18 U.S.C. §1030(g) and K.S.A. 60-3321, permanently enjoin the defendants, their agents, servants, employees, and those controlled directly or indirectly by any of them from the manufacture, assembly, sale, marketing, use of business telephone numbers, advertisement, and maintenance of a website for the purpose of said conduct, of any hacked modems and/or other electronic equipment, programs, software or related equipment, known or intended for use in unauthorized access to HSD service;

(3) In accordance with 17 U.S.C. 1203 and 18 U.S.C. §1030, award the plaintiff against the defendants, damages for all losses incurred as a result of defendants violation.

   (a)  The actual damages which the plaintiff has suffered, together with any additional profits earned by defendants' sale of hacked modem devices, or alternatively at plaintiffs election,

   (b)  Statutory damages in an amount between $200 and $2500 for each of the hacked modem devices sold and/or distributed by the defendants in violation of 17 U.S.C. §1201.

 (4)  An accounting of all profits and expenses realized by defendants in violation of 17 U.S.C. §1201, 18 U.S.C. §1030, and K.S.A. 60-3322 together with defendants' production of all records reflecting sales of hacked modems; and,

 (5)  An Order imposing a constructive trust based upon defendants' unjust enrichment derived from profits on sales of hacked modems and related equipment, and based upon their conversion of profits diverted from and properly due to TWC by reason of theft of its HSD service; and

 (6)  An Order directing defendants to pay damages by reason of their trespass to TWC's computer system and tortious interference with TWC's contracts; and

 (7)  In accordance with 17 U.S.C. §1203(b)(4) and (5), 18 U.S.C. §1030 and K.S.A. 60-3323, direct defendants to pay plaintiff its full costs, including reasonable attorney fees and investigative expenses incurred in this action; and

 (8)  Grant such other and further relief as is just.

## DESIGNATION OF PLACE OF TRIAL

Pursuant to Local Rule 40.2(a), plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

DANIEL J. LEFKOWITZ, ESQ., P.C.

By /s/Daniel J. Lefkowitz
   Daniel J. Lefkowitz–Pro Hac Vice Pending
   320 New York Avenue
   Huntington, NY  11743
   (631) 692-4700 – Telephone
   (631) 659-3740 - Facsimile


By /s/Bernard J. Rhodes
   Bernard J. Rhodes      KS #15716
   LATHROP & GAGE, LLP
   2345 Grand Blvd., Ste. 2400
   Kansas City, MO  64108
   (816) 292-2000 – Telephone
   (816) 292-2001 – Facsimile

Attorneys for Plaintiff